## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARRY A. DAVIS and<br>MADONNA S. DAVIS,<br><br>Plaintiffs,<br><br>v.<br><br>ACE HARDWARE<br>CORPORATION., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 12-1185-SLR-CJB |

## REPORT AND RECOMMENDATION

Plaintiffs Harry A. Davis and Madonna S. Davis ("Plaintiffs") filed this action for injury allegedly caused by exposure to asbestos against a multitude of defendants (collectively, "Defendants"). (D.I. 1, ex. A)  Presently pending before the Court are Defendant Paccar, Inc.'s ("Paccar") Motion to Dismiss for Failure to State a Claim, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss for Failure to State a Claim"), (D.I. 64); Defendants' Motion to Dismiss Plaintiffs' Complaint for Failure to Comply with Florida's Asbestos and Silica Compensation Fairness Act ("Motion to Dismiss for Failure to Comply with Florida's Asbestos Act"), also filed pursuant to Rule 12(b)(6), (D.I. 283); and Defendants' Motion to Stay All Discovery and Pretrial Deadlines ("Motion to Stay"), (D.I. 287).  For the reasons that follow, the Court recommends that the Motion to Dismiss for Failure to Comply with Florida's Asbestos Act be GRANTED, recommends that the Motion to Dismiss for Failure to State a Claim be DENIED as moot, and orders that the Motion to Stay is GRANTED.

## I.      BACKGROUND

### A.      Factual Background

Plaintiffs Harry A. and Madonna S. Davis are a married couple residing in the State of Florida. (D.I. 1, ex. A at ¶¶ 1-2, 99) Plaintiffs allege, *inter alia*, that while living and working in Florida, Mr. Davis was wrongfully exposed to asbestos and/or asbestos-containing products which were "mixed, mined, manufactured, distributed, sold, removed, installed and/or used" by the Defendants, and that as a result of this exposure, Mr. Davis developed "[l]ung [c]ancer . . . and other asbestos-related injuries and diseases." (*Id.* at ¶¶ 54-55, 57) Plaintiffs named 50 companies as Defendants. (*See id.* at ¶¶ 3-52) Though the counts in Plaintiffs' Complaint contain no headings, which makes it difficult to ascertain the specific causes of action they represent, all appear to be state common law claims relating to the alleged asbestos exposure (such as claims for negligence, fraud, product liability, premises liability, conspiracy and loss of consortium). (*Id.* at ¶¶ 53-100)

**B.    Procedural Background**

This action was originally commenced in the Superior Court of the State of Delaware on July 19, 2012. (D.I. 1, ex. A) On September 21, 2012, the action was removed to this Court by defendant United Technologies Corporation based on federal officer jurisdiction, 28 U.S.C. § 1442(a)(1). (D.I. 1) This case was referred to the Court by Judge Sue L. Robinson on December 13, 2012, to conduct all proceedings and hear and determine all motions, through and including the pre-trial conference. (D.I. 71)

On November 16, 2012, Paccar filed its Motion to Dismiss for Failure to State a Claim and its opening brief in support of that Motion. (D.I. 64, 65) After a late-filed response from Plaintiffs, the motion was fully briefed on April 22, 2013. (D.I. 149, 156).

Before the Court ruled on the Motion to Dismiss for Failure to State a Claim, all

2

Defendants filed their Motion to Dismiss for Failure to Comply with Florida's Asbestos Act on

September 12, 2013. (D.I. 283)  This motion seeks dismissal of all counts based upon Plaintiffs'

alleged failure to comply with Florida's Asbestos and Silica Compensation Fairness Act, FLA.

STAT. §§ 774.201-209 ("Florida's Asbestos Act" or "the Act").  (D.I. 284 at 1)  This motion was

fully briefed as of October 15, 2013, (D.I. 334), and the Court heard oral argument on the motion

on October 29, 2013.

On September 18, 2013, Defendants filed their Motion to Stay, seeking to stay all

discovery and scheduling deadlines until after the Court's resolution of the Motion to Dismiss for

Failure to Comply with Florida's Asbestos Act. (D.I. 287)  Before the Court ruled on the Motion

to Stay, however, the parties agreed upon and submitted additional stipulations (which the Court

later granted) staying all pretrial deadlines and certain discovery deadlines until certain further

rulings of the Court. (D.I. 320, 338)

## II.    LEGAL STANDARD

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil

Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is

entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  When presented with a Rule 12(b)(6) motion to

dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the court separates the factual and legal

elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but

[disregarding] any legal conclusions." *Id.* at 210–11.  Second, the court determines "whether the

facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for

relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  In assessing the

plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III.   DISCUSSION

The Court will here primarily address Defendants' Motion to Dismiss for Failure to Comply with Florida's Asbestos Act.[1] As the Court's resolution of this motion is dispositive and would require the submission of a new complaint (if Plaintiff is able to make such a submission), the Motion to Dismiss for Failure to State a Claim (a motion based on the content of the initial Complaint) is thus moot. And to the extent that the Motion to Stay is not already moot in light of the Court's subsequent orders that certain discovery and pretrial deadlines be stayed pending resolution of Defendants' Motion to Dismiss for Failure to Comply with Florida's Asbestos Act, (D.I. 320, 338), the Court orders that the motion be granted, and further orders that all discovery and scheduling deadlines are stayed unless and until a new complaint is filed. The Court will now turn to the remaining motion.

---

[1]     Analysis of that motion will also require analysis of the requirements of state law. "A federal court's role under [federal officer jurisdiction] is similar to that of a federal court sitting in diversity." *Introcaso v. Meehan*, Civil Action No. 07-3726, 2008 WL 161213, at *1 (E.D. Pa. Jan. 14, 2008). Thus, this Court must "apply the choice of law rule of the forum state to determine the law applicable to this action, as it would in a diversity action." *Gallelli v. Prof'l Ins. Mgmt.*, Civ. A. No. 92-5812, 1994 WL 45729, at *3 (E.D. Pa. Feb. 10, 1994). In tort actions such as this, Delaware has adopted the "most significant relationship" test for choice of law. *ACCU Pers., Inc. v. AccuStaff, Inc.*, 846 F. Supp. 1191, 1212 (D. Del. 1994) ("That is, the state law which 'has the most significant relationship to the occurrence and the parties' will govern.") (quoting *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991)). Here, there is no dispute that Florida law applies, as it is the state law with the most significant relationship to the occurrence and the parties. (D.I. 1, ex. A at ¶ 56; D.I. 284 at 1-2)

### A.     Background Regarding the Act's Requirements

In 2005, after being enacted by the Florida Legislature, Florida's Asbestos Act became

effective. *Am. Optical Corp. v. Spiewak*, 73 So.3d 120, 123 (Fla. 2011). This Act made

"significant changes to the cause of action for damages resulting from an exposure to asbestos."

*Id.* Among those changes are the provisions in Sections 774.204 and 774.205 of the Act, which

are the subject of Defendants' instant motion.

Section 774.205(2), in relevant part, states as follows:

> A plaintiff in a civil action alleging an asbestos or silica claim *must
> include with the complaint or other initial pleading a written
> report and supporting test results* constituting prima facie evidence
> of the exposed person's asbestos-related or silica-related physical
> impairment *meeting the requirements of s. 774.204(2), (3), (5), or
> (6).*

FLA. STAT. § 774.205(2) (emphasis added). Of the various sections incorporated by Section

774.205(2), the parties agree that Section 774.204(3) is relevant here, as this section sets forth the

"requirements" of a "prima facie showing" for a plaintiff who is a "smoker" and who brings an

asbestos claim based upon "cancer of the lung, larynx, pharynx, or esophagus[.]" (D.I. 284 at 2-

4); FLA. STAT. § 774.204(3). Florida's Asbestos Act defines a "[s]moker" as a person who "has

smoked cigarettes or used other tobacco products on a consistent and frequent basis within the

last 15 years." FLA. STAT. § 774.203(29). It is not disputed by either Plaintiffs or Defendants

that Mr. Davis qualifies as a "smoker" under the Act. (D.I. 284 at 4 & exs. B-C; D.I. 321; D.I.

342 (hereinafter "Tr.") at 47)

Section 774.204(3) dictates that such a plaintiff "may not file or maintain a civil action . .

. in the absence of a prima facie showing that includes all of the following requirements":

(a)  A diagnosis by a qualified physician who is board certified in pathology, pulmonary medicine, or oncology, as appropriate for the type of cancer claimed, of a primary cancer of the lung, larynx, pharynx, or esophagus, and that exposure to asbestos was a substantial contributing factor to the condition.

(b)  Evidence sufficient to demonstrate that at least 10 years have elapsed between the date of first exposure to asbestos and the date of diagnosis of the cancer.

(c)  Radiological or pathological evidence of asbestosis or diffuse pleural thickening or a qualified physician's diagnosis of asbestosis based on a chest X ray graded by a certified B-reader as at least 1/0 on the ILO scale and high-resolution computed tomography supporting the diagnosis of asbestosis to a reasonable degree of medical certainty.

(d)  Evidence of the exposed person's substantial occupational exposure to asbestos.  If a plaintiff files a civil action alleging an asbestos-related claim based on cancer of the lung, larynx, pharynx, or esophagus, and that plaintiff alleges that his or her exposure to asbestos was the result of extended contact with another exposed person who, if the civil action had been filed by the other exposed person, would have met the substantial occupational exposure requirement of this subsection, and the plaintiff alleges that he or she had extended contact with the exposed person during the time period in which that exposed person met the substantial occupational exposure requirement of this subsection, the plaintiff has satisfied the requirements of this paragraph. The plaintiff in such a civil action must individually satisfy the requirements of this subsection.

(e)  If the exposed person is deceased, the qualified physician, or someone working under the direct supervision and control of a qualified physician, may obtain the evidence required in paragraphs (b) and (d) from the person most knowledgeable about the alleged exposures that form the basis of the asbestos claim.

(f)  A conclusion by a qualified physician that the exposed person's medical findings and impairment were not more probably the result of causes other than the asbestos exposure revealed by the exposed person's employment and medical history.  A conclusion that the medical findings and impairment are "consistent with" or

> "compatible with" exposure to asbestos does not meet the
> requirements of this subsection.

FLA. STAT. § 774.204(3). As it is undisputed that Plaintiffs failed to attach or otherwise make

any of these submissions required by Section 774.204(3) along with the filing of their Complaint,

Defendants argue that the Complaint must be dismissed. (D.I. 284 at 4-5)

Plaintiffs, for their part, argue otherwise. The Court will take up Plaintiffs' argument

below.

**B.      Plaintiffs' Statutory Construction Argument:  That Florida's Asbestos Act
          Applies Only to Actions Filed in Florida State Courts**

Plaintiffs argue that the plain language of Section 774.205(2) of Florida's Asbestos Act

provides that it is only applicable to cases filed in Florida courts.[2] (D.I. 321 at 2) Thus, as

Plaintiffs originally filed this case in Delaware state court (not Florida state court), they argue

that Defendants' motion should be denied. (*Id.* at 2-4)

When interpreting a statute like this one, the "first step . . . is to determine whether the

language at issue has a plain and unambiguous meaning with regard to the particular dispute in

the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). The inquiry "must cease if the

---

[2]      Actually, Plaintiffs argued in their Answering Brief that the Act as a whole only
applied "to cases filed *and maintained in* Florida courts." (D.I. 321 at 2 (emphasis added))
However, at oral argument, Plaintiffs appeared to modify their position, acknowledging that in
several cases that were removed to federal court, the respective federal courts appropriately
looked to and applied portions of the Act. (Tr. at 46-47); *see also Pendergast v. Am. Optical
Corp.*, MDL No. 875, E.D. PA Civil Action No. 2:10-68061, 2011 WL 5458097, at *1 & n.1
(E.D. Pa. July 1, 2011) (referencing Section 774.204(1)); *Ward v. Allis-Chalmers Pumps, Inc.*,
MDL 875, E.D. Pa Civil Action No. 9-80030, 2010 WL 7746401, at *1 & n.1 (E.D. Pa. Dec. 23,
2010) (same); *Faddish v. Gen. Elec. Co.*, MDL No. 875, Civil Action No. 09-70626, 2010 WL
4146108, at *4, *8 (E.D. Pa. Oct. 20, 2010) (referencing Section 774.205). Thus, although not a
model of clarity, it appears that Plaintiffs' argument really is that the Act (and Section 774.205(2)
in particular) can only apply to cases originally filed in Florida state court. (*See* Tr. at 44-47).

statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.*

(quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)). "The plainness or

ambiguity of statutory language is determined by reference to the language itself, the specific

context in which that language is used, and the broader context of the statute as a whole." *Id.* at

341. A court must also be conscious not to "nullify" a legislature's "policy choice" or otherwise

"subvert[ ] . . . the statutory plan" when engaging in statutory interpretation. *CSX Transp., Inc. v.*

*Alabama Dep't of Revenue*, 131 S. Ct. 1101, 1111 (2011) (internal quotation marks and citation

omitted).

Plaintiffs concede that no court has interpreted the statute in the way they suggest. (Tr. at

50) But they make a few different arguments as to how the Act's language and history supports

their position, which the Court will address in turn.

First, Plaintiffs assert that it is clear that Section 774.205(2)'s requirements only apply to

claims filed in Florida state court, when Section 774.205(2) is read in a "harmonious" way with

the Act's Section 774.205(1). (D.I. 321 at 2-3) Section 774.205(1) reads as follows:

> *A civil action alleging an asbestos* or silica *claim may be brought*
> *in the courts of this state* if the plaintiff is domiciled in this state or
> the exposure to asbestos or silica that is a substantial contributing
> factor to the physical impairment of the plaintiff on which the
> claim is based occurred in this state.

FLA. STAT. § 774.205(1) (emphasis added). Plaintiffs assert that because Section 774.205(1)

references only "claim[s] . . . brought in the courts of [Florida]" then Section 774.205(2)'s

requirements must similarly only apply to such claims. (D.I. 321 at 2-3) For a number of

reasons, the Court is not persuaded.

As an initial matter, the wording of Section 774.205(1) cuts against Plaintiff's argument.

Section 774.205(1) does not explicitly limit Section 774.205(2), nor any other section of

Florida's Asbestos Act. In fact, Section 774.205(1) appears to operate independently from any

other section of the Act, in that it addresses very different subject matter than do the Act's other

provisions. Specifically, Section 774.205(1) appears akin to a Florida "venue" statute, as it sets

out the conditions under which a person may file a claim under the Act in Florida state court.[3]

Thus, it is understandable why Section 774.205(1)'s requirements would be limited to claims

"brought in the courts of this state" (as opposed to claims brought in other jurisdictions to which

the Act's language could apply): because this subsection is particularly concerned with who may

access *Florida courts* in order to pursue such litigation. Provisions like Section 774.205(2), by

contrast, address the substance of what a plaintiff must immediately put forward in the way of

"prima facie evidence" regarding the substance of a claim made under the Act—requirements

that (unlike those in Section 774.205(1)), do not necessarily have an inherent connection only to

claims originally filed in Florida courts.[4]

---

[3]       Indeed, the wording of this portion of the Act is not that different from the
language used in the general federal venue statute regarding when litigation may be brought in a
particular federal district court. *Compare* FLA. STAT. § 774.205(1) ("A civil action . . . may be
brought in the courts of this state if the plaintiff is domiciled in this state or . . . a substantial
contributing factor to the physical impairment of the plaintiff on which the claim is based
occurred in this state"), *with* 28 U.S.C. § 1391(b)(1)-(2) ("A civil action may be brought in -- (1)
a judicial district in which any defendant resides, if all defendants are residents of the State in
which the district is located; [or] (2) a judicial district in which a substantial part of the events or
omissions giving rise to the claim occurred, or a substantial part of property that is the subject of
the action is situated[.]")

[4]       Plaintiffs note that a portion of Section 774.205(2) refers to particular "asbestos or
silica claim[s] pending on the effective date of this act" and to how plaintiffs in such cases
should abide by Section 774.205(2)'s other requirements. (D.I. 321 at 2) Although Plaintiffs
suggest that this reference to "pending" claims was meant to refer only to claims "pending in
Florida state court" (and thus, that the rest of Section 774.205(2) refers only to such claims as
well), nothing in this subsection of the Act indicates that this is necessarily the case.

Moreover, interpreting Section 774.205(2) in the manner Plaintiffs suggest would run afoul of the "usual rule" that "'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'" *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711-12 n.9 (2004) (quoting 2A N. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 46:06, p. 194 (6th rev. ed. 2000)); *cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks and citation omitted). This canon of statutory construction suggests that in Section 774.205(1), the Florida legislature intended to address requirements applicable to claims filed in "in the courts of this state"; the absence of such limiting language in Section 774.205(2) is thus presumed to be intentional and meaningful.[5]

Additionally, other portions of Section 774.205(2)'s text suggest that a plaintiff's duty to comply with the subsection is not limited to litigation originally filed in Florida state courts. Section 774.205(2) states that it applies to all plaintiffs "in a civil action alleging an asbestos or silica claim[.]" FLA. STAT. § 774.205(2). This quoted phrase alone references three terms defined by the statute—"civil action[,]" "asbestos claim" and "silica claim"—that are instructive

---

[5]     In making this argument in their briefing, Plaintiffs do not acknowledge the presence of Section 774.205(3), the only other subsection contained in Section 774.205. Section 704.205(3) bares a close resemblance to Section 774.205(1)—and is distinguishable from Section 704.205(2)—in that it explicitly applies only to claims filed "in this state[,]" i.e., the state of Florida. *See* FLA. STAT. § 774.205. In relevant part, Section 774.205(3) states that "[a]ll asbestos claims and silica claims *filed in this state* on or after the effective date of this act must include, in addition to the written report described in subsection (2) and the information required by s. 774.207(2), a sworn information form containing [certain factual information and documentation regarding each claim.]" FLA. STAT. § 774.205(3).

here:

> FLA. STAT. § 774.203(12): "Civil action" *means all suits or claims of a civil nature in court*, whether cognizable as cases at law or in equity or in admiralty. The term does not include an action relating to a workers' compensation law, or a proceeding for benefits under a veterans' benefits program.

> FLA. STAT. § 774.203(3): "Asbestos claim" *means a claim* for damages or other civil or equitable relief *presented in a civil action*, arising out of, based on, or related to the health effects of exposure to asbestos, including loss of consortium, wrongful death, and any other derivative claim made by or on behalf of an exposed person or a representative, spouse, parent, child, or other relative of an exposed person. The term does not include claims for benefits under a workers' compensation law or veterans' benefits program, or claims brought by a person as a subrogee by virtue of the payment of benefits under a workers' compensation law.

> FLA. STAT. § 774.203(27): "Silica claim" *means a claim* for damages or other civil or equitable relief *presented in a civil action*, arising out of, based on, or related to the health effects of exposure to silica, including loss of consortium, wrongful death, and any other derivative claim made by or on behalf of an exposed person or a representative, spouse, parent, child, or other relative of an exposed person. The term does not include claims for benefits under a workers' compensation law or veterans' benefits program, or claims brought by a person as a subrogee by virtue of the payment of benefits under a workers' compensation law.

FLA. STAT. §§ 774.203(3), (12) & (27) (emphasis added). These definitions indicate that Section

774.205(2)'s requirements apply to asbestos and silica claims brought in "civil actions"—a term

that, in turn, applies to "*all* suits or claims of a civil nature *in court*" and one not expressly

limited to suits in the courts of "the state." It stands to reason that had the Florida Legislature

meant to limit Section 774.205(2)'s requirements only to asbestos claims originally brought in

Florida state court, they would not have used the broadly-defined term "civil action" to refer to

the cases in which those requirements have force.[6]

Therefore, contrary to Plaintiffs' assertions, the text of Section 774.205 does not suggest the outcome they seek. Instead, the statute's text supports Defendants' position.[7]

Second, Plaintiffs argue that Section 774.205(2) should be interpreted as applying only to litigation filed in Florida state courts, because "the policy rational[e] behind" Florida's Asbestos Act was "to preserve judicial resources" in Florida state courts. (D.I. 321 at 2-3) Plaintiffs' argument here (which goes not directly to Section 774.205(2)'s text, but to the intent of the Act's drafters) is similarly unpersuasive.

In Section 774.202 of the Act, a section entitled "Purpose[,]" the Florida Legislature set out the various purposes motivating the Act's passage:

> It is the purpose of this act to:
>
> (1) Give priority to true victims of asbestos and silica, claimants who can demonstrate actual physical impairment caused by exposure to asbestos or silica;
>
> (2) Fully preserve the rights of claimants who were exposed to asbestos or silica to pursue compensation if they become impaired in the future as a result of the exposure;
>
> (3) Enhance the ability of the judicial system to supervise and

---

[6] Further, the text of Section 774.205(2) does not reference any section of Florida's Asbestos Act other than Section 774.204, which likewise contains no language limiting its application to Florida state courts. *See, e.g.*, FLA. STAT. § 774.204(3) ("A person who is a smoker may not file or maintain a *civil action* alleging an *asbestos claim* . . . in the absence of a prima facie showing that includes all of the following requirements . . .") (emphasis added).

[7] *Cf. Fluitt v. Advance Auto Parts, Inc.*, C.A. No. N12C-07-241 ASB, 2014 Del. Super. LEXIS 29, at *2 & n.5 (Del. Super. Ct. Jan. 29, 2014) (implicitly rejecting the plaintiffs' argument that "no provision of the Act applies to actions filed outside Florida[,]" by applying the Act and ultimately granting the defendants' motion to dismiss based upon plaintiffs' failure to comply with Section 774.204(3)).

control asbestos and silica litigation; and

(4) Conserve the scarce resources of the defendants to allow compensation to cancer victims and others who are physically impaired by exposure to asbestos or silica while securing the right to similar compensation for those who may suffer physical impairment in the future.

FLA. STAT. § 774.202; *see also Am. Optical Corp.*, 73 So.3d at 124 (Florida's Supreme Court citing Section 774.202 and noting that "the Act serves [all] four purposes"). Both Plaintiffs and Defendants agree that the Act's reference to the "ability of the judicial system to supervise and control" asbestos litigation was related, at least in part, to concerns about Florida's asbestos docket. (D.I. 321 at 2-3; D.I. 334 at 5); *see also Williams v. Am. Optical Corp.*, 985 So.2d 23, 25 (Fla. Dist. Ct. App. 2008) (noting that the Act was "[p]rompted" by the fact that "[l]itigation in Florida state courts involving asbestos contamination has been considerable and persistent for a number of years"). However, even as to this stated purpose, it is notable that Section 774.202 refers to the "judicial system"—not solely to the judicial system of Florida. And, as Defendants note, (D.I. 334 at 5), the Act's preamble contains multiple references to the impact that asbestos litigation has had on other "state and federal courts" outside of Florida. 2005 Fla. Sess. Law Serv. 2005-274 (West) (noting that exposure to asbestos has "created a flood of litigation in state and federal courts[,]" citing to the United States Supreme Court's jurisprudence, and further noting that the volume of asbestos cases "continues to strain state courts"). Thus, it is not at all clear that the Florida Legislature's focus on the preservation of judicial resources was solely related to the resources of the courts of Florida.

Additionally, Section 774.202 makes clear that other purposes motivated the Act's passage—such as giving priority to "true victims" of asbestos and silica, preserving the rights of

13

such claimants who became impaired in the future, and conserving the "scarce resources" of defendants to allow for just compensation to victims—factors that are also not unique to Florida and have an impact beyond its borders. As if to reinforce this notion, the Act's preamble cites to various concerns regarding the scope of asbestos litigation that are explicitly national in scope. *Id.* (noting that "millions" of Americans have been exposed to asbestos, that the "inefficiencies and societal costs of asbestos litigation" have been documented in various national studies, and that many national companies and "American workers" have been affected by bankruptcies relating to asbestos litigation).

Ultimately, as Defendants note, (D.I. 334 at 6), applying Section 774.205(2) to "a case filed in Delaware by Florida citizens who allege asbestos exposure in Florida" is not at all inconsistent with the Act's stated purposes. Thus, adoption of Defendants' interpretation of the statute does not "nullify" the Florida Legislature's "policy choice" or otherwise "subvert" its "statutory plan[.]" *CSX Transp., Inc.*, 131 S. Ct. at 1111.

For these reasons, the Court's analysis of the Act's text leads to the conclusion that, in a case like this one, Section 774.205(2) *can* apply. A more complex inquiry is whether Section 774.205(2) *should* apply in federal courts pursuant to the guidance set forth by the United States Supreme Court in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010).[8]

---

[8]     In their Answering Brief, Plaintiffs do not explicitly address the question of whether Florida's Asbestos Act should apply in federal courts under *Erie* and its progeny, although Defendants made arguments about the issue in their Opening Brief. (D.I. 284 at 4-5; Tr. at 48) Even though a failure to respond to Defendants' arguments as to this issue might constitute waiver, "choice-of-law arguments involve issues purely of law, and given that they involve choice of law, the public interest weighs toward [] consideration of them." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283,

**C.    Whether Section 774.205(2) of Florida's Asbestos Act Should Apply in Federal Courts Under *Shady Grove***

It is a long-respected principle that a federal court sitting in diversity must apply state

substantive law and federal procedural law.[9]  That principle is governed by a statutory

framework, but "the way that it is administered varies depending upon whether there is a federal

rule addressed to the matter." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559

U.S. 393, 417 (2010).[10]  When both a Federal Rule of Civil Procedure ("Federal Rule" or "Rule")

---

301-02 (3d Cir. 2012).  In light of this, and in light of the fact that Defendants addressed this area
of law in their briefing, the Court will analyze the choice-of-law question here.

[9]    Once a case is removed to the United States district courts, the Federal Rules of
Civil Procedure govern the pleading requirements for a plaintiff's complaint. *See* Fed. R. Civ. P.
81(c); *Frederico v. Home Depot*, No. Civ.A. 05-5579(JAP), 2006 WL 624901, at *2 n.4 (D.N.J.
Mar. 10, 2006) (citing Fed. R. Civ. P. 81(c) and holding that Rule 9(b), rather than New Jersey
state rules governing civil practice, govern the plaintiff's allegations of fraud, even though the
plaintiff originally filed the case in New Jersey state court and defendant removed it to federal
court); *see also Lin v. Chase Card Servs., Inc.*, Civil Action No. 09-5938 (JAP), 2010 WL 1265185, at
*2 n.2 (D.N.J. Mar. 26, 2010).

[10]    The *Shady Grove* Court was divided, with Justice Scalia delivering a plurality
opinion, and Justice Stevens concurring in the result but analyzing the question on narrower
grounds than those relied upon by the plurality. *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp.
2d 670, 675 (E.D. Pa. 2010) ("Justice Stevens' approach does, however, form the 'narrowest
grounds' in *Shady Grove* because, although he found Rule 23 to conflict with § 901(b) along
with the plurality, Justice Stevens' Rules Enabling Act analysis called for an analysis of the
state's substantive rights and remedies that was consistent with approach of the four members of
the dissent."); *see also Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 850-53 (W.D.
Mich. 2012) (concluding, after extensive analysis, that Justice Stevens' concurrence in *Shady
Grove* "provides the narrowest grounds for the Court's decision").  Justice Scalia's plurality
opinion, unlike Justice Stevens' concurrence, utilized a decisional framework that asked only
"whether [the Federal Rule at issue] answers the question in dispute[,]" and "[i]f it does, it
governs—[the state law at issue] notwithstanding—unless it exceeds statutory authorization or
Congress's rulemaking power." *Shady Grove*, 559 U.S. at 398 (citing *Burlington N. R.R. Co. v.
Woods*, 480 U.S. 1, 4-5 (1987)).  "When a fragmented Court decides a case and no single
rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be
viewed as that position taken by those Members who concurred in the judgments on the
narrowest grounds[.]" *Marks v. United States*, 430 U.S. 188, 193 (1977) (quotations omitted).

and a state law appear as if they might govern a question before a federal court sitting in

diversity, that court first looks to "whether the scope of the federal rule is sufficiently broad to

control the issue before the court, thereby leaving no room for the operation of seemingly

conflicting state law." *Id.* at 421 (internal quotation marks and citations omitted). Where the

Federal Rule in fact does not apply or can operate alongside the state rule, then the court must

consider "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of

inequitable administration of the laws." *Shady Grove*, 559 U.S. at 417 n.2 (internal quotations

and citations omitted). On the other hand, when the Federal Rule is sufficiently broad enough to

control the issue before the court, such that there is a "direct collision" between the Federal Rule

and the state law, the court must decide whether application of the federal rule represents a valid

exercise of the rulemaking authority bestowed by the Rules Enabling Act (28 U.S.C. § 2072).

*Shady Grove*, 559 U.S. at 417, 422. In such a situation, the Rules Enabling Act instructs that the

---

Consequently, the Court here looks to Justice Stevens' concurrence for guidance on this issue,
and all references to *Shady Grove* in this Report and Recommendation (unless otherwise noted)
are from his concurring opinion. *See Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977,
983 n.6 (10th Cir. 2010) (holding that Justice Stevens' concurrence is controlling); *Lisk v.
Lumber One Wood Preserving, LLC*, Civil Action No. 3:13-cv-01402-AKK, 2014 WL 66512, at
*5 n.5 (N.D. Ala. Jan. 8, 2014) (utilizing Justice Stevens' framework upon determining that
"[t]he majority of courts attempting to apply *Shady Grove* likewise have concluded that Justice
Stevens' concurrence controls"); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676(ADS)(WDW),
2012 WL 764199, at *12 (E.D.N.Y. Mar. 5, 2012) (collecting cases and concluding that a
"majority of district and circuit courts that have found Justice Stevens['] concurring opinion was
on the 'narrowest grounds', and therefore is the controlling opinion"); *Jones*, 845 F. Supp. 2d at
850-53 (Justice Stevens' "analytical framework" on the effect of the Rules Enabling Act "should
be deemed controlling"); *In re Wellbutrin*, 756 F. Supp. 2d at 675 (same, citing numerous cases);
*but see Knepper v. Rite Aid Corp.*, 675 F.3d 249, 265 (3d Cir. 2012) (referencing both Justice
Scalia's plurality opinion and Justice Stevens' concurring opinion in its *Shady Grove* choice-of-
law analysis, without discussion of which opinion is controlling, and noting that "[u]nder either
view" the defendant's argument failed).

Federal Rule should apply unless application of that Rule "abridge[s], enlarge[s] or modif[ies] any substantive right[.]" *Id.* at 418 (quoting 28 U.S.C. § 2072(b)); *see also id.* at 422.

The Court will apply these principles to determine whether Section 774.205(2) has effect in this federal case. The inquiry begins by determining whether there is a Federal Rule addressed to this matter, and, if so, whether the scope of that Federal Rule is sufficiently broad to control the issue before the Court. *Shady Grove*, 559 U.S. at 417-21.

### 1.   Whether Federal Rules of Civil Procedure 8 and 9 Are Sufficiently Broad to Control the Issue Before the Court

In answering whether "the scope of the federal rule is sufficiently broad to control the issue before the court, thereby leaving no room for the operation of seemingly conflicting state law," *id.* at 421 (internal quotations and citation omitted), a court asks whether the Federal Rule when "fairly construed . . . with sensitivity to important state interests and regulatory policies" can operate alongside the state statutory rule. *Id.* (internal quotations and citations omitted). Particularly important in this analysis is whether the respective rules have sufficiently different purposes and whether each rule can operate without interfering with the other. *See Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 7 (1987) ("Thus, the Rule's discretionary mode of operation unmistakably conflicts with the mandatory provision of Alabama's affirmance penalty statute. Moreover, the purposes underlying the Rule are sufficiently coextensive with the asserted purposes of the Alabama statute to indicate that the Rule occupies the statute's field of operation . . . ."); *Walker*, 446 U.S. at 750-52.

In a non-fraud case, Federal Rule 8's "General Rules of Pleading" apply, requiring that a complaint in federal court contain only a "short and plain statement of the claim showing that the

pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Federal Rule 9, in turn, describes those

limited situations (i.e., where a party is alleging "fraud or mistake") in which a party is required

to plead "with particularity" the circumstances constituting the claim. Fed. R. Civ. P. 9(b). On

the other hand, Section 774.205(2) requires a plaintiff to file, along with his complaint, a "written

report and supporting test results . . . meeting the requirements" of the applicable provision of

Section 774.204—all in order to set out "prima facie evidence" as to an "essential element" of an

asbestos-related claim: the plaintiff's "[p]hysical impairment . . . to which asbestos . . . exposure

was a substantial contributing factor[.]" FLA. STAT. §§ 774.204(1) & 774.205(2). Thus, the

initial question the Court considers is whether Rules 8 and 9 are "sufficiently broad" to "control

the issue" of the type and quantum of evidence relating to elements of a claim that must be

contained within or submitted along with a plaintiff's complaint, "thereby leaving no room for

the operation" of Section 774.205(2).[11] *Shady Grove*, 559 U.S. at 421.

In *Shady Grove*, Justice Stevens found that Federal Rule 23 (the Federal Rule covering

class action lawsuits) was sufficiently broad to govern the question before the court in that case:

whether a class action could proceed for the instant suit. Thus, there was no room for the

operation of a New York rule preventing plaintiffs from maintaining class actions seeking

---

[11]     While it may be possible that Federal Rules other than Rules 8 and 9 could be said
to conflict with Section 774.205(2), the Court considers only Rules 8 and 9 here for a number of
reasons. First, Plaintiffs did not suggest that any other Federal Rules might so conflict with the
statute. (Tr. at 52-58) Second, the United States Court of Appeals for the Third Circuit has
extensively analyzed the Federal Rules of notice pleading in *Chamberlain v. Giampapa*, 210 F.3d
154, 159-60 (3d Cir. 2000), an important choice-of-law case addressing an analogous state
statute that the Court discusses *infra*. And third, other courts have concluded that Rules 8 and 9
are the Federal Rules that "most obvious[ly]" present a potential conflict with a state statute
requiring a plaintiff to submit additional materials (somewhat similar to those at issue here) at the
time he files his complaint. *See, e.g., Jones*, 845 F. Supp. 2d at 854.

statutory penalties. This conclusion was premised on the finding that Rule 23 "squarely governed the determination" of whether the class action at issue should be certified, because answering that question was Federal Rule 23's "explicit function[.]" *Id.* at 401, 429-30.

The only court addressing the question of whether the Federal Rules of notice pleading conflict with Section 774.205(2) of Florida's Asbestos Act quickly concluded that a conflict does exist. *See Hughes v. Am. Tripoli, Inc.*, No. 2:04CV485FTM29DNF, 2006 WL 1529051, at *3 (M.D. Fla. May 30, 2006).[12] In *Hughes*, a diversity case, the United States District Court for the Middle District of Florida held that Section 774.205(2) (and Section 774.207, another section of the Act not explicitly raised by the parties here) were "procedural in nature [and] inconsistent with . . . Federal Rules of Civil Procedure [7-10] as they relate to federal notice pleading[.]" *Hughes*, 2006 WL 1529051, at *2-3. The *Hughes* Court, however, provided little additional analysis in support of its holding. *Id.*

Cases from the United States Court of Appeals for the Third Circuit, particularly those addressing the applicability of analogous state statutes, counsel that closer consideration is appropriate. In three cases, the Third Circuit analyzed whether state statutes requiring the filing of an affidavit of merit[13] applied in federal court. *See Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 303-04 (3d Cir. 2012);

---

[12]   In coming to this decision, the *Hughes* Court did not have the benefit of Justice Stevens' later analysis in *Shady Grove*, and thus did not analyze this choice-of-law issue (as the Court does here) using the framework set out in Justice Stevens' *Shady Grove* concurrence. *Hughes*, 2006 WL 1529051 at *3.

[13]   An affidavit of merit is typically an affidavit filed by a licensed physician in a medical malpractice case, in which the physician states that a reasonable probability exists that the medical care that is the subject of the complaint falls outside of acceptable professional standards. *See, e.g., Chamberlain*, 210 F.3d at 157.

*Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-64 (3d Cir. 2011); *Chamberlain v. Giampapa*, 210 F.3d 154, 157-61 (3d Cir. 2000).

In the first of these decisions, *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000), the Third Circuit held that New Jersey's affidavit of merit statute did not conflict with Federal Rules 8 and 9, and affirmed the district court's decision to apply the statute. *Id.* at 160-61. The *Chamberlain* Court based its finding as to the lack of conflict, on, in essence, five points. *Id.* at 160. The first point was foundational and one of definition: "[t]he required affidavit is not a pleading[.]" *Id.* at 160. The second point—related to the first—was that "[t]he affidavit of merit statute has no effect on what is included in the pleadings of a case or the specificity thereof." *Id.* The third point was that the purposes behind the New Jersey statute and Federal Rules 8 and 9 are different, as the Federal Rules "give notice of the plaintiff's claim," and the New Jersey statute "assure[s] that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings." *Id.* The fourth point was one of timing: New Jersey's affidavit of merit statute allowed a plaintiff 60 days (extendable to 120 days if granted an extension by the court) after filing of the complaint before he must submit the affidavit of merit. *Id.* at 158. Thus, the affidavit of merit "is not filed until after the pleadings are closed[.]" *Id.* at 160. And the fifth point was that because New Jersey's affidavit must contain only a statement from a physician "that a 'reasonable probability' exists that the care that is the subject of the complaint falls outside acceptable professional standards[,]"—unlike a plaintiff's complaint, it "does not contain a statement of the factual basis for the claim." *Id.* at 157, 160.

Since *Chamberlain*, the Third Circuit has twice analyzed whether state affidavit of merit statutes should apply (finding in both instances that they do); each time it has used the same type

20

of analysis found in *Chamberlain*, and has similarly concluded that each of the five points referenced above supported its holding. *See Nuveen*, 692 F.3d at 303-04; *Liggon-Redding*, 659 F.3d at 262-64.[14]  Like *Chamberlain*, *Liggon-Redding* did not explicitly emphasize one point over any other. *Liggon-Redding*, 659 F.3d at 262-63; *Chamberlain*, 210 F.3d at 160.  However, the most recent decision, *Nuveen*, contained a statement that the Court's prior holding in *Chamberlain* "was premised on the temporal separation of the filing of the complaint and the affidavit." *Nuveen*, 692 F.3d at 303.  To some degree, then, the *Nuveen* Court appears to have given a type of elevated importance in this analysis to the timing of the filing of the additional materials in question.

It is also worth noting that several of the Third Circuit's pre-*Nuveen* decisions affirmed the application of Delaware's affidavit of merit statute in federal courts—a statute that requires that the affidavit of merit be filed with the complaint (or, if a motion for extension is timely filed, 60 days after the filing of the complaint). *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 404-05 (3d Cir. 2011); *Hartman v. Corr. Med. Servs.*, 366 F. App'x 453, 455 (3d Cir. 2010). These Third Circuit opinions, however, do not analyze the choice-of-law issue, *see id.*, nor do the opinions of this Court that the Third Circuit affirmed, *see Woods v. Corr. Med. Servs., Inc.*, Civ. No. 08-397-LPS, 2011 WL 1261580, at *5 (D. Del. Mar. 31, 2011); *Hartman v. Corr. Med. Servs.*, Civ. No. 08-30-SLR, 2009 WL 1220530, at *2 (D. Del. May 5, 2009).  Indeed, the Court

---

[14]     Unlike *Chamberlain* and *Nuveen* (decisions that both address New Jersey's statute), *Liggon-Redding* addressed the applicability of Pennsylvania's certificate of merit statute. *Liggon-Redding*, 659 F.3d at 262. The Pennsylvania statute, however, shares similar features to the New Jersey statute first analyzed in *Chamberlain*. *See id.* (noting that, like New Jersey's statute, Pennsylvania's statute does not require filing of the certificate of merit until 60 days after the complaint and that the affidavit does not "set forth any factual averments upon which a claim is based").

is aware of only one case from this Court addressing the Delaware affidavit of merit statute and the type of choice-of-law question at play here. In a pre-*Nuveen* decision, *Hopkins v. Frontino*, Civil Action No. 11-900-RGA, 2012 WL 404961, at *1 (D. Del. Feb. 7, 2012), this Court, focusing on the "purpose" of the Delaware statute, found that like the statutes addressed in *Chamberlain* and *Liggon-Redding,* the Delaware affidavit of merit statute was "designed to reduce the filing of meritless negligence claims, and the penalty for failing to comply is dismissal." *Hopkins*, 2012 WL 404961, at *1. Thus, it held that the statute's requirements were "substantive" and that they were applicable in a federal diversity action. *Id.* at *1.[15]

Assessing the five points discussed in *Chamberlain* in relation to this case, some could be read to counsel against the finding of a conflict between Rules 8 and 9 and Section 774.205(2), but others strongly suggest the opposite conclusion.

On the first point—whether the required materials are "pleadings"—Section 774.205(2) is akin to the New Jersey affidavit of merit statute. That is, the written report and test results at issue required by Florida's Asbestos Act (hereinafter, the "written report requirements") are not "pleadings" as that term is defined in the Federal Rules and the Florida Rules of Civil Procedure. *See* Fed. R. Civ. P. 7(a) (defining "[p]leadings" as a finite set of submissions that does not

---

[15]     Looking outside the Third Circuit, the question of whether affidavit of merit statutes can operate alongside Federal Rules 8 and 9 and can be applied in federal court has been litigated on numerous occasions. No clear answer emerges from these decisions, however, with even federal courts within a single state or federal district coming to different conclusions. *Compare Jones*, 845 F. Supp. 2d at 853-56, *and Crouch v. Harper Cnty. Cmty. Hosp.*, Case No. CIV-11-421-F, 2011 U.S. Dist. LEXIS 156984, at *2-11 (W.D. Okla. June 13, 2011), *and Garland Dollar Gen. LLC v. Reeves Dev., LLC*, Civil Action No. 3:09-CV-0707-D, 2010 WL 4259818, at *6 (N.D. Tex. Oct. 21, 2010), *with Long v. Adams*, 411 F. Supp. 2d 701, 704-09 (E.D. Mich. 2006), *and Spottedcorn v. Advanced Corr. Healthcare, Inc.,* No. CIV-11-1096-C, 2011 WL 6100653, at *1 (W.D. Okla. Dec. 7, 2011), *and Estate of C.A. v. Grier*, 752 F. Supp. 2d 763, 768-71 (S.D. Tex. 2010).

include documents attached to a complaint); Fla. R. Civ. P. 1.100 (same). Thus, this point weighs against finding a conflict between Rules 8 and 9 and Section 774.205(2).

As to the second point, as a technical matter, the written report requirements in Section 774.205(2), as with the New Jersey statute, have "no effect on what is included in the pleadings of a case or the specificity thereof." *Chamberlain*, 210 F.3d at 160. Florida's Asbestos Act does not require a plaintiff to plead with greater specificity in the body of his complaint than is otherwise required by Rule 8. Thus, when analyzed in this very literal fashion, this factor too suggests the absence of a direct conflict. *Cf. Lee v. Putz*, No. 1:03-CV-267, 2006 WL 1791304, at *4 (W.D. Mich. June 27, 2006) ("The filing of an affidavit of merit along with a complaint . . . does not expand or conflict with Rule 8(a)'s minimal pleading requirements. In fact, the affidavit of merit requirement does not have any effect on the content of a plaintiff's complaint. A plaintiff may still plead the grounds for his claim in a short plain statement while also attaching an affidavit of merit . . ."); *Thompson v. Kishwaukee Valley Med. Grp.*, No. 86 C 1483, 1986 WL 11381, at *2 (N.D. Ill. Oct. 6, 1986) ("Attachment of [an] affidavit to plaintiffs' complaint would not enlarge the pleading requirements of Rule 8. A plaintiff could attach [an] affidavit and still plead the factual basis of his claim in a short plain statement in the complaint itself.").

It is worth noting, though, that the above analysis as to these first two points relies heavily on a formalistic approach to what one considers to be a part of a "pleading." Indeed, in the affidavit of merit context, under certain circumstances, courts have ultimately found that the contents of an affidavit required to be filed contemporaneously with a complaint could be

considered to be a "pleading requirement."[16] That type of analysis also seems to be bolstered by the fact that many courts routinely grant Rule 12(b)(6) motions when a plaintiff fails to submit the affidavit with his complaint,[17] even though Rule 12(d) requires that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[18]

---

[16]     See, e.g., Spottedcorn, 2011 WL 6100653, at *1 (the Oklahoma affidavit of merit statute "prescribes an additional pleading requirement, attachment of an affidavit"); Estate of C.A., 752 F. Supp. 2d at 770 ("[The Texas certificate of merit statute] imposes more stringent pleading requirements than Rules 8 and 9 of the Federal Rules of Civil Procedure . . . ."); Long, 411 F. Supp. 2d at 704 (the Michigan affidavit of merit statute "provides a heightened pleading requirement"); Braddock v. Orlando Reg'l Health Care Sys., Inc., 881 F. Supp. 580, 584 (M.D. Fla. 1995) (the requirement under Florida law that a medical expert provide an affidavit as part of a plaintiff's complaint is a "heightened pleading requirement"); but see Lewis v. Center for Counseling and Health Res., No. C08-1086 MJP, 2009 WL 2342459, at *3 (W.D. Wash. July 28, 2009) ("Even though Washington's statute requires that the certificate of merit be filed alongside a plaintiff's complaint, it cannot be considered an additional pleading requirement because its content and purpose differ from the content and purpose of a pleading as governed by the federal rules.").

[17]     See, e.g., Kennedy v. United States Veterans Admin., No. 2:11-cv-150, 2013 WL 5524686, at *1-3 (S.D. Ohio. Oct. 4, 2013); DeVary v. Desrosiers, Civ. Action No. 12-150-GMS, 2013 WL 4758005, at *2-3 (D. Del. Sept. 3, 2013); Borders v. Lappin, No. 1:11cv1514, 2013 WL 3804858, at *3-6 (N.D. Ohio July 19, 2013); Southwell v. Summit View of Farragut LLC, No. 3:10-CV-550, 2011 WL 2749614, at *5 (E.D. Tenn. July 15, 2011), rev'd, in part, on other grounds, 494 F. App'x 508 (6th Cir. 2012); Miller v. Monroe Cnty., Tenn., No. 3:09-CV-85, 2010 WL 1427298, at *4-5 (E.D. Tenn. Apr. 7, 2010).

[18]     Indeed, Defendants here have, on the one hand, argued that the written report requirements of Section 774.205(2) are not a "pleading" or pleading requirement, while at the same time arguing that dismissal is appropriate under Rule 12(b)(6). (See Tr. at 18; D.I. 284 at 1) Those two arguments appear to be in conflict. Nuveen, 692 F.3d at 303-04 n.13 (noting that were the filing of a certificate of merit not a pleading requirement, this would counsel in favor of a defendant seeking dismissal pursuant to a motion for summary judgment under Rule 56, and not pursuant to a Rule 12(b)(6) motion for failure to state a claim); see also Benjamin Grossberg, Comment: Uniformity, Federalism, and Tort Reform: The Erie Implications of Medical Malpractice Certificate of Merit Statutes, 159 U. Pa. L. Rev. 217, 247-48 (2010) ("If [an affidavit of merit is] not part of the pleading process is it proper to grant a 12(b)(6) motion to punish a plaintiff who has not filed one?").

The third point raised in *Chamberlain* regards whether the purpose behind Section 774.205(2) is different from the purpose of Rule 8—a rule that seeks to "give notice of the plaintiff's claim[.]" *See Chamberlain*, 210 F.3d at 160. Here, in light of the Act's contents, it is not entirely clear what the single purpose is behind Section 774.205(2) in particular, or indeed if there is more than one purpose behind it. Florida's Asbestos Act does not explicitly answer the question, nor have the courts.

As noted above, the Act's Section 774.202 lists a number of "purpose[s]" that motivated the passage of the entire Act. FLA. STAT. § 774.202.[19] After reading Section 774.202, it could, for example, be said that the purpose behind Section 774.205(2)'s written report requirements is different from the purpose motivating Rule 8, in that the requirements are meant to help ensure, from the outset of litigation, that claims of asbestos-related injury are limited to only the "true victims of asbestos" (those who can "demonstrate actual physical impairment caused by exposure to asbestos"). FLA. STAT. § 774.202 (listing this as a "purpose" behind the Act); *see also* 2005 Fla. Sess. Law Serv. 2005-274 (West) (noting that the cost of compensating individuals exposed to asbestos who are not yet sick jeopardizes the ability of defendants to compensate those who are sick at present). But one could also plausibly cite the contents of Section 774.202 and argue that Section 774.205(2)'s written report requirements are intended to play a similar role to that of Rule 8—to require a plaintiff to give clear notice of the evidentiary basis for an element of his

---

[19]     *See also Am. Optical Corp. v. Spiewak*, 73 So.3d 120, 124, 130 (Fla. 2011) (noting the different purposes behind the Act set out in Section 774.202, but concluding that "[i]t is clear that the main purpose of the Act is to alter the common law elements for an action arising from asbestos-related disease" by requiring that a plaintiff suffer not simply from an asbestos-related disease or injury, but instead from a "[p]hysical impairment" to which asbestos exposure was a substantial contributing factor).

claim of "asbestos-related . . . impairment[,]" FLA. STAT. § 774.205(2), as early as possible in the litigation, so as to ensure that the remainder of the case proceeds at maximum efficiency for the parties and the court. *See* FLA. STAT. § 774.202 (listing as a "purpose" of the Act the need to "[e]nhance the ability of the judicial system to supervise and control asbestos . . . litigation"); 2005 Fla. Sess. Law Serv. 2005-274 (West) (discussing how asbestos litigation can be inefficient for courts and litigants, due to the volume of asbestos cases and their cost). While "purpose" is an important factor in this analysis, *see Burlington*, 480 U.S. at 7; *Walker*, 446 U.S. at 750-52, in the Court's view, here it is difficult to articulate the purpose of Section 774.205(2) with real certainty, or to find that it clearly favors or disfavors the finding of a conflict.

     *Chamberlain*'s fourth point addresses the timing of any additional filing required by the statute. On this point, Section 774.205(2) is clearly distinguishable from New Jersey's affidavit of merit statute. Section 774.205(2) requires a plaintiff to file the written report requirements regarding the applicable provision of § 774.204 along "with the complaint[.]" FLA. STAT. § 774.205(2). Other than cases pending when the Act was passed in 2005, there is no circumstance under the Act where a plaintiff may file these materials at any time other than along with the complaint. *Id.* By contrast, the New Jersey statute allows a plaintiff 60 days (extendable to 120 days if an extension was granted) after filing the complaint before he must submit the affidavit of merit. *Chamberlain*, 210 F.3d at 158.

     As noted above, the Third Circuit has recently indicated that the timing of when the additional materials must be filed is a factor of significant importance in this analysis. *See Nuveen*, 692 F.3d at 303; *see also* (Tr. at 55). This logic is consistent with that of numerous district courts confronted with a similar choice-of-law question. *See, e.g., Jones v. Corr. Med.*

*Servs., Inc.*, 845 F. Supp. 2d 824, 855-56 n.12 (W.D. Mich. 2012) (concluding that decisions

analyzing statutes that do not require contemporaneous filing of an affidavit of merit with the

complaint are of "limited relevance" when analyzing a statute that does require contemporaneous

filing); *Estate of C.A. v. Grier*, 752 F. Supp. 2d 763, 770-71 (S.D. Tex. Oct. 15, 2010) (finding a

conflict between the Texas affidavit of merit statute and Rule 8, in significant part because the

Texas statute requires that the affidavit of merit be filed along with the complaint). Accordingly,

the timing of the filing of the written report requirements of Section 774.205(2) weighs heavily

in favor of the finding of a conflict between that statute and Federal Rule 8.

The fifth and final point addresses the substance of what is contained in the additional

filing, and asks whether that filing must "contain a statement of the factual basis for the claim."

*Chamberlain*, 210 F.3d at 160. Section 774.205(2) can be distinguished from the New Jersey

affidavit of merit statute on this point as well, because the Act requires a plaintiff to provide a

written report and test results that "constitut[e] prima facie evidence" relating to an element of

his claim. *See* FLA. STAT. § 774.205(2). For example, in the case of a plaintiff who is a

"smoker," Section 774.204(3) requires that the plaintiff provide, *inter alia*: (1) "[e]vidence

sufficient to demonstrate that at least 10 years have elapsed between the date of first exposure to

asbestos and the date of diagnosis of the cancer"; (2) radiological or pathological evidence of

asbestosis or diffuse pleural thickening or a qualified physician's diagnosis of asbestosis based

on a chest x-ray, along with x-ray results; and (3) "[e]vidence of the exposed person's substantial

occupational exposure to asbestos." FLA. STAT. § 774.204(3); FLA. STAT. § 774.205(2). It is

also true that, aside from these components, Section 774.204(3) also requires that a party make

two different submissions regarding the "diagnoses" or "conclusion" of a "qualified

27

physician"[20]—the type of submissions that might seem more closely related to the contents of a

typical affidavit of merit. *See Chamberlain*, 210 F.3d at 158, 160 (noting that the New Jersey

affidavit of merit statute required the submission of physician's affidavit stating that a reasonable

probability exists that the care that is the subject of the complaint falls outside acceptable

professional standards, a submission that "does not contain a statement of the factual basis for the

claim"). Yet while these latter two submissions sound more like the provision of an expert's

opinion, the former required submissions clearly amount to the presentation of factual matter

going directly to an element of an asbestos claim.

    Admittedly, the conflict question is not free from doubt.[21] However, in considering the

---

[20]    Again, these are a "diagnosis by a qualified physician . . . that exposure to asbestos was a substantial contributing factor to the condition" and a "conclusion by a qualified physician that the exposed person's medical findings and impairment were not more probably the result of causes other than the asbestos exposure[.]" FLA. STAT. §§ 774.204(3)(a) & (f).

[21]    Perhaps the most analogous case in this Circuit where this type of choice-of-law issue was analyzed in some detail is *King v. DuPont de Nemours and Co.*, 741 F. Supp. 2d 699 (E.D. Pa. 2010). The state statute in question there was a Texas asbestos tort reform statute, which requires that one of two different types of physician's reports be filed, depending on whether or not the plaintiff has been diagnosed with either malignant mesothelioma or some other malignant asbestos-related cancer. If such a diagnosis was received, the plaintiff's physician report must state only that "to a reasonable degree of medical probability, exposure to asbestos was a cause" of that disease. Tex. Civ. Prac. & Rem. Code Ann. § 90.003(a)(1)(B). If no such diagnosis was received, the physician's report must be far more detailed. For example, the report must then include a verification that the physician has "concluded that the exposed person's medical findings and impairment were not more probably the result of causes other than asbestos exposure revealed by the exposed person's occupational, exposure, medical, and smoking history[,]" and it must be accompanied by copies of "testing reviewed by the physician in reaching the physician's conclusions." *Id.* at §§ 90.003(a)(2)(E) & (F). In *King*, the United States District Court for the Eastern District of Pennsylvania found no conflict between the Texas statute and any Federal Rule, on the ground that there "is no federal procedure regarding a minimum threshold of asbestos-related injury before a case can proceed, and no corresponding pleural registry or deferred docket mechanism." *King*, 741 F. Supp. 2d at 702. However, the *King* Court's conclusion does not convince the Court that its analysis should be any different here. In part that is because, although it did not drive the *King* Court's decision, Texas' statute

points raised by the Third Circuit in *Chamberlain* and its progeny, the Court finds that Rule 8's

requirement of a "short and plain statement of the claim" is sufficiently broad to control the issue

before the Court, thereby leaving no room for the operation of the Act's conflicting provisions on

that score. In the end, the written report requirements of the Act at issue here require a plaintiff

to provide attachments containing significant factual detail and evidence regarding an element of

his asbestos claim at the time of the filing of the complaint (and *only* then). Moreover, if the

plaintiff cannot meet these factual and evidentiary hurdles, his claim will be dismissed and he

will not have access to the court system. But in the federal system, as to this type of claim, it is

Rule 8[22] that sets out the amount of factual detail required to be presented at the pleading stage

regarding the elements of a claim, such that it may go forward. Thus, there is a "direct collision"

between Rule 8 and the Act in this regard. *Cf. Thompson v. United States*, No. 1:13-CV-0550,

2013 WL 3480347, at \*3-4 (N.D. Ohio July 10, 2013) (finding Ohio affidavit of merit statute to

conflict with Rules 8 and 9, because it, *inter alia*, would allow "Rule 8 to set out only necessary,

but not sufficient, elements of a cause of action"); *Spottedcorn v. Advanced Corr. Healthcare*,

---

does not require a plaintiff to serve each defendant with the required "medical report" until thirty
days after that defendant answers the complaint or otherwise enters an appearance in the action.
Tex. Civ. Prac. & Rem. Code Ann. § 90.006. Thus, unlike a plaintiff subject to Florida's
Asbestos Act, a plaintiff abiding by Texas' statute need not submit any additional material with
his complaint. *See id.* It is also worth noting that the Court's ultimate outcome here as to the
applicability of Section 774.205(2) is no different than the ultimate outcome in *King*. *King* found
the Texas statute's requirements to be part of Texas' substantive law and to be applicable in that
federal case, because to find otherwise would undermine the twin objectives of *Erie*. *King*, 741
F. Supp. 2d at 704. Here, albeit after a different type of analysis, the Court, as discussed *infra*,
finds Section 774.205(2)'s written report requirements to be applicable.

[22]     Rule 9, in turn, which limits itself to certain kinds of cases (not including asbestos
claims like these) where a heightened pleading standard is required, is the exception to the rule
set out in Rule 8.

*Inc.*, No. CIV-11-1096-C, 2011 WL 6100653, at *1 (W.D. Okla. Dec. 7, 2011) (finding that

Oklahoma affidavit of merit statute, requiring attachment of affidavit to pleading, conflicts with

Rule 8, which "governs the pleading standards of a complaint in federal court and does not

impose the requirement of an attached affidavit"); *Estate of C.A.*, 752 F. Supp. 2d at 770

(concluding that the Texas certificate of merit statute conflicts with Rule 8 because it "imposes

more stringent pleading requirements" by, *inter alia*, requiring a plaintiff to "set forth specifically

for each theory of recovery . . . the factual basis for each such claim" contemporaneously with his

complaint) (internal quotation marks and citation omitted).

### 2.   Whether Application of Rule 8 Would Abridge, Enlarge or Modify a State-Created Right or Remedy

Having made this determination, the Court next must decide whether application of Rule

8 "abridge[s], enlarge[s] or modif[ies] any substantive right." *Shady Grove*, 559 U.S. at 418

(internal quotation marks and citations omitted). Justice Stevens explained that this limitation

provided by the Rules Enabling Act "does not mean that federal rules cannot displace state policy

judgments; it means only that federal rules cannot displace a State's definition of its own rights

or remedies." *Id.* (citing *Sibbach v. Wilson & Co.*, 312 U.S. 1, 13-14 (1941)). Justice Stevens

further noted that:

> Congress has thus struck a balance: "[H]ousekeeping rules for
> federal courts" will generally apply in diversity cases,
> notwithstanding that some federal rules "will inevitably differ" from
> state rules. *Hanna* [*v. Plumer*, 380 U.S. 460, 473 (1965)]. But not
> every federal "rul[e] of practice or procedure," [28 U.S.C.] §
> 2072(a), will displace state law. To the contrary, federal rules must
> be interpreted with some degree of "sensitivity to important state
> interests and regulatory policies," *Gasperini v. Center for
> Humanities, Inc.*, [518 U.S. 415, 427 n.7 (1996)], and applied to
> diversity cases against the background of Congress' command that

> such rules not alter substantive rights and with consideration of "the
> degree to which the Rule makes the character and result of the
> federal litigation stray from the course it would follow in state
> courts." *Hanna*, 380 U.S. at 473 . . . . This can be a tricky balance
> to implement.

*Shady Grove*, 559 U.S. at 418-19. Ultimately, the "bar for finding an Enabling Act problem" is

"a high one." *Id.* at 432. Justice Stevens further explained his view in this regard:

> The mere fact that a state law is designed as a procedural rule
> suggests it reflects a judgment about how state courts ought to
> operate and not a judgment about the scope of state-created rights
> and remedies. And for the purposes of operating a federal court
> system, there are costs involved in attempting to discover the true
> nature of a state procedural rule and allowing such a rule to operate
> alongside a federal rule that appears to govern the same question.
> The mere possibility that a federal rule would alter a state-created
> right is not sufficient. There must be little doubt.

*Id.*

The ultimate inquiry a court must perform "does not necessarily turn on whether the state

law at issue takes the form of what is traditionally described as substantive or procedural.

Rather, it turns on whether the state law actually is part of a State's framework of substantive

rights or remedies." *Id.* at 419. The phrase "'substantive rights' embraces only state rights . . .

that are sought to be enforced in the judicial proceedings." *Id.* at 428 (quoting *Sibbach*, 312 U.S.

at 13-14) (internal quotation marks omitted). Even a state law that appears to be procedural in

nature may in some instances be "sufficiently intertwined with a state right or remedy" that there

would be an Enabling Act problem. *Id.* Indeed, some state procedural rules "become so bound

up with the state-created right or remedy that it defines the scope of that substantive right or

remedy." *Id.* at 420. This is true, for example, where a "seemingly procedural rule[ ]" makes it

"significantly more difficult to bring or to prove a claim, thus serving to limit the scope of that

claim." *Id.*

In *Shady Grove*, Justice Stevens found that applying Rule 23, and not the New York

statute that precluded plaintiffs from maintaining class actions seeking statutory penalties, did not

"abridge, enlarge or modify New York's substantive rights or remedies." *Id.* at 401, 436 (internal

quotation marks omitted). In doing so, Justice Stevens reasoned that the New York statutory rule

is "a rule in New York's procedural code about when to certify class actions brought under any

source of law[.]" *Id.* at 436; *see also id.* at 432 ("The text of [the New York statutory rule]

expressly and unambiguously applies not only to claims based on New York law but also to

claims based on federal law or the law of any other State."). The opinion also supported its

conclusion by looking to the legislative history behind the creation of the New York rule. In

doing so, Justice Stevens concluded that the New York rule "reflects a policy judgment about

which lawsuits should proceed in New York courts in a class form and which should not." *Id.* at

434. Thus, according to Justice Stevens, the legislative history "reveals a classically procedural

calibration of making it easier to litigate claims in New York courts (under any source of law)"

similar to the "sort of calculation that might go into setting filing fees or deadlines for briefs."

*Id.* at 435.

Section 774.205(2) differs significantly from the New York rule analyzed in *Shady*

*Grove*. The New York rule broadly applied to the question of whether to certify class actions

regardless of the source of the law to be applied in the case. *Shady Grove*, 559 U.S. at 435-36.

Section 774.205(2), in contrast, applies only to cases subject to Florida's Asbestos Act—i.e.,

cases subject to Florida substantive law that address "asbestos or silica claim[s.]" *See* FLA.

STAT. § 775.205(2). Also, Section 774.205(2) is found within Florida's Asbestos Act (which

itself is located within Title XLV of Florida Statutes, a grouping of Chapters entitled

"Torts")—and is not a separate state procedural rule. Differences such as these have been found

to inform decisions that the state restriction at issue was "intertwined with [state] substantive

rights and remedies" for purposes of Justice Stevens' *Shady Grove* analysis. *See, e.g., Lisk v.*

*Lumber One Wood Preserving, LLC*, Civil Action No. 3:13-cv-01402-AKK, 2014 WL 66512, at

*7 (N.D. Ala. Jan. 8, 2014) (finding that application of the Federal Rule to the exclusion of the

requirements of a state statute would violate the Enabling Act, where the state statute's provision

at issue is "contained in the same section of the [State] Code that creates a private right of action"

and "its text limits its application to private rights of action brought under" that statute); *In re*

*Nexium (Esomeprazole) Antitrust Litig.*, Civil Action No. 12-md-02409-WGY, 2013 WL

4832176, at *28 (D. Mass. Sept. 11, 2013) (same, as to Illinois Antitrust Act); *Phillips v. Philip*

*Morris Cos. Inc.*, 290 F.R.D. 476, 481 (N.D. Ohio 2013) (same, as to Ohio Consumer Sales

Practices Act); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 415-16 (S.D.N.Y. 2011)

(same, as to Illinois Antitrust Act); *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 677

(E.D. Pa. 2010) (same, as to Illinois Antitrust Act); *Bearden v. Honeywell Int'l Inc.*, No. 3:09-

1035, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010) (same, as to Tennessee Consumer

Protection Act).[23] Moreover, by requiring a showing of a certain amount of evidence of

---

[23]     As previously noted, the Florida Supreme Court explained in *Am. Optical Corp.*
that when the Florida legislature enacted Florida's Asbestos Act, it substantively altered the
common law elements for actions arising from asbestos-related disease. 73 So.3d at 130. It did
so by requiring, for the first time, that a plaintiff demonstrate "particular physical impairment
symptoms" to which asbestos was a substantial contributing factor. *Id*. at 131; *see also id*. at 129
(noting that the "well-established concept of *injury* under Florida common law[,]" i.e., what was
required prior to the Act, is far less "strenuous" than the "legislative schedule of *impairment*"
required by the Act) (emphasis in original). Section 774.204 is the section of the Act that both
sets out this new element of Florida asbestos claims and describes the quantum of evidence

"physical impairment" at the onset of litigation, Section 774.205(2) makes it "significantly more difficult to bring . . . a claim," *Shady Grove*, 559 U.S. at 420, because, as Defendants note, it "requires the plaintiff to establish [significant evidence in support of] her claims earlier in the process[,]" (Tr. at 58). Thus, Section 774.205(2) "serv[es] to limit the scope of that claim" and ultimately "defines the scope of [the] substantive right or remedy" created by Florida's Asbestos Act. *Shady Grove*, 559 U.S. at 420; *cf. id.* at 420 n.4 (noting that where a state makes it more difficult to prove a particular type of state law claim, even if cast in evidentiary terms or terms relating to burdens of proof, the rule that does this should be seen as an expression of state substantive policy) (citing *Milam v. State Farm Mut. Auto Ins. Co.*, 972 F.2d 166, 170 (7th Cir. 1992)).[24]

   While the Court recognizes that the "bar for finding an Enabling Act problem is a high one[,]" it has "little doubt" that application of Rule 8 here "would alter a state-created right[.]" *Shady Grove*, 559 U.S. at 432. Thus, the Court concludes that application of Section 774.205(2)

_____

necessary to make out a "prima facie showing" as to this "physical impairment"-related element. *See* FLA. STAT. § 774.204. That showing differs depending on what medical condition a plaintiff suffers from and whether or not the plaintiff is a "smoker." *See id.* Thus, Section 774.205(2) is not, like certain of the provisions at issue in these cited cases, in the exact same section as the part of the statute that defines the private right of action (here, Section 774.204). However, Section 774.205(2) directly references and incorporates Section 774.204, and is closely associated with how and when a plaintiff must provide the "prima facie evidence" required to meet Section 774.204's requirements. *See* FLA. STAT. § 774.205(2). It is therefore significantly intertwined with the substantive rights set out by the Act, in much the same way as are the provisions at issue in the cited cases.

   [24]   As the Court noted *supra*, the purpose behind Section 774.205(2) is not necessarily clear. But this lack of clarity distinguishes Section 705.205(2) from the New York rule at issue in *Shady Grove*, in that the Court cannot firmly and unequivocally conclude that Section 774.205(2) resulted from a "classically procedural calibration" by the Florida Legislature. *Shady Grove*, 559 U.S. at 435.

is proper in this case.[25]

**D.      Application of Section 774.205(2) and Resolution of Defendants' Motion to Dismiss for Failure to Comply with Florida's Asbestos Act**

Plaintiffs' Complaint contains numerous claims, all of which appear to be state common law claims relating to Mr. Davis' alleged asbestos exposure—such as claims for negligence, fraud, product liability, premises liability, conspiracy and loss of consortium. (*See* D.I. 1, ex. A at ¶¶ 53-100) As each of these claims is "related to the health effects of exposure to asbestos," each is an "asbestos claim" as that term is defined by Florida's Asbestos Act. *See* FLA. STAT. § 774.203(3) (defining "Asbestos claim" as a "claim for damages or other civil or equitable relief presented in a civil action, arising out of, based on, or related to the health effects of exposure to asbestos, including loss of consortium, wrongful death, and any other derivative claim made by or on behalf of an exposed person . . ."). Thus, each of Plaintiffs' claims is subject to the requirements of § 774.205(2), which apply to any plaintiff alleging an asbestos claim. *See* FLA. STAT. § 774.205(2).

As previously noted, for a plaintiff alleging lung cancer who is a "smoker," Section

---

[25]      Even if the Court concluded differently as to the first step of the *Shady Grove* analysis and found that Rule 8 did not "control the issue" presented by Section 774.205(2), application of that statutory provision would still be proper. Consideration of "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws[,]" *Shady Grove*, 559 U.S. at 417 n.2 (internal quotation marks and citations omitted), would then counsel in favor of applying Section 774.205(2) in federal court. As Defendants argue, it is "somewhat obvious" that a plaintiff who is a "smoker" would file in another state court or federal court (as opposed to Florida state court) if Section 774.205(2) did not apply in federal court. (Tr. at 35-36) This is because filing in such courts would allow that plaintiff to avoid the Act's significant requirements at the time of filing; yet, this provision would be controlling in an action upon the same claim by the same parties in Florida state court. *Cf. Chamberlain*, 210 F.3d at 161 ("The [New Jersey affidavit of merit] statute is outcome determinative on its face, and failure to apply it would encourage forum shopping and lead to the inequitable administration of the law.").

774.205(2) requires that the "written report and supporting test results" set out in Section

774.204(3) must be filed "with the complaint[.]" FLA. STAT. § 774.205(2); *see also* FLA. STAT. §

774.204(3). And it is undisputed that Plaintiffs failed to attach or otherwise provide any of these

required submissions along with the filing of the Complaint. (D.I. 334 at 6) Therefore, the Court

recommends that the Motion to Dismiss for Failure to Comply with Florida's Asbestos Act be

granted.[26]

### E. Whether Plaintiffs' Claims Should be Dismissed With or Without Prejudice

Defendants seek dismissal of Plaintiffs' claims with prejudice. (D.I. 284 at 6) Plaintiffs

ask that if the Court recommends dismissal of the claims, it do so without prejudice, to give them

"time to meet the requirements of the Act." (Tr. at 57)

Generally, "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit

a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d

at 236. Here, Plaintiffs assert that they believed they were not legally obligated to submit the

materials required by Section 774.205(2). (*See* D.I. 321 at 1-2) Upon the Court's ruling to the

---

[26]     As noted earlier, in *Nuveen*, the Third Circuit stated that the failure to file an
affidavit of merit pursuant to the New Jersey statute should be addressed via a motion for
summary judgment, not via a Rule 12(b)(6) motion. *See Nuveen*, 692 F.3d at 303-04 & n.13.
Again, however, that was because the *Nuveen* Court found that the affidavit of merit at issue
there—one required to be filed within 60 to 120 days after a plaintiff's complaint—was "not a
pleading requirement." *Id.* Here, because the Court has found the written report requirements at
issue here to be akin to a pleading requirement, and because they relate to the failure to present
evidence regarding an element of Plaintiffs' claims, *Nuveen* and other precedent counsels that
dismissal through the vehicle of a Rule 12(b)(6) motion is appropriate. *Id; cf. DeVary*, 2013 WL
4758005, at *2-3 (post-*Nuveen*, dismissing a case pursuant to Rule 12(b)(6) where a plaintiff
failed to contemporaneously file his affidavit of merit in accordance with the Delaware statute);
*see also Fluitt*, 2014 Del. Super. LEXIS 29, at *4 (granting the defendants' motion to dismiss
based upon the plaintiffs' failure to comply with Section 774.204(3) where "[t]he [p]arties do not
dispute that [the plaintiff alleged to have suffered asbestos-related injury] is a 'smoker'").

contrary, Plaintiffs ask for an opportunity to determine whether they can comply. (Tr. at 57)

Thus, the Court cannot say at this stage that allowing the opportunity to amend will necessarily

be "inequitable or futile." *Phillips*, 515 F.3d at 236. Further supporting the conclusion that

dismissal without prejudice is appropriate here is the language of Section 774.205(2), which

states that the "claim of the plaintiff shall be dismissed without prejudice upon a finding of

failure to make the required prima facie showing." FLA. STAT. § 774.205(2).

Accordingly, the Court recommends dismissal without prejudice, and that, if the District

Court affirms this Court's recommendation of dismissal, that the District Court thereafter permit

Plaintiffs forty-five (45) days to file an amended complaint addressing the deficiencies noted

herein.

## IV.   CONCLUSION

As Plaintiffs failed to meet the requirements of Section 774.205(2), the Court

recommends that (1) the Motion to Dismiss for Failure to Comply with Florida's Asbestos Act

be GRANTED; (2) Plaintiffs' claims be dismissed without prejudice; and (3) if the District Court

affirms this Court's recommendation of dismissal, that the District Court thereafter permit

Plaintiffs forty-five (45) days to file an amended complaint addressing the deficiencies noted

herein. The Court also recommends that the Motion to Dismiss for Failure to State a Claim be

DENIED as moot. It orders that the Motion to Stay be GRANTED, and further orders that all

discovery and scheduling deadlines are stayed unless and until a new complaint is filed.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss

of the right to de novo review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924,

925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order in Non-Pro Se Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available

on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  February 21, 2014

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE